**Lawrence C. POPE, Relator,**

v.

**Clarence FERGUSON, District Judge, et al., Respondents.**

No. B–1758.

AKA–OC–60

Supreme Court of Texas.

Oct. 1, 1969.

Byrd, Davis, Eisenberg & Clark, Don L. Davis, Austin, for relator.

Crawford Martin, Atty. Gen., Gilbert Pena, Asst. Atty. Gen., Austin, Holloway Martin, County Atty., Groesbeck, for respondents.

ORIGINAL MANDAMUS

CALVERT, Chief Justice.

In this direct proceeding in this court, relator, Lawrence C. Pope, seeks a writ of mandamus directing Honorable Clarence Ferguson, Judge of the District Court, 77th Judicial District, Limestone County, to dismiss from the court's criminal docket cause No. 4742–A in which relator is charged by indictment with armed robbery of the First State Bank of Thornton, Texas. The writ is sought on the ground that relator has been denied his constitutional right of speedy trial as guaranteed to him by the Sixth and Fourteenth Amendments to the Constitution of the United States and by Article I, § 10, Constitution of Texas, Vernon's Ann.St. We hold that this court does not have jurisdiction to grant the relief sought, and, accordingly, we deny the prayer for a writ of mandamus.

Relator's petition is a by-product of the decision of the Supreme Court of the United States in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), in which that court disapproved our holdings in Cooper v. State, 400 S.W.2d 890 (Tex.Sup.1966), and Lawrence v. State, 412 S.W.2d 40 (Tex.Sup.1967), that Texas courts owed no duty to a federal prisoner to seek his return to this State for trial on a pending state criminal charge. Having disapproved our holdings in *Cooper* and *Lawrence*, and in spite of the suggestions of concurring Justices Black and Harlan, the Court declined to go further and decide the ultimate question presented by Smith's petition, i. e., whether, because of the long delay in giving him a trial, Smith was entitled to have this court issue a writ of mandamus to District Judge Hooey directing dismissal of the criminal case pending against him. Instead, the Court remanded

the cause to this court for further proceedings not inconsistent with its opinion. What course of proceedings would have been consistent with the court's opinion was left unclear, as is indicated by the three separate opinions of the three concurring Justices. Fortunately, Smith saved us the embarrassment of trying to guess what was in the Court's mind, and of possibly misguessing our way into error by pleading guilty to the state criminal charge and thus rendering moot the mandamus proceeding in this court.

█ It may be just as well that the Supreme Court of the United States did not give this court specific instructions in Smith v. Hooey because there is no indication in the briefs presented to the Court in that case, or in the several opinions filed in the case, that jurisdiction of this court to order a dismissal was a matter of concern. It seems to us that the primary question in any such case is this: Does the Supreme Court of Texas have jurisdiction to issue a writ of mandamus directing a district court to dismiss a criminal case on the ground that the defendant has been denied a speedy trial? We think a negative answer to the question is compelled by state constitutional and statutory provisions, and, as indicated, that the negative answer is decisive of this case.

The facts of this case are, in some respects, almost a carbon copy of the facts in Smith v. Hooey, supra.[1] Relator was convicted on March 22, 1961, in a United States district court, on a bank robbery charge which had been filed on November 17, 1960. He was sentenced by the federal court to 25 years in the custody of the Attorney General of the United States. An indictment for armed robbery of the same bank was returned into the state district court by a Limestone County grand jury on November 30, 1960, and was numbered 4742–A on the court's docket. It is that case which relator seeks to have dismissed. An indictment of relator for armed robbery

of another bank was returned into another state district court on January 4, 1961, on which charge he was tried and convicted and sentenced to 50 years imprisonment, the sentence to run concurrently with the federal sentence. Relator was incarcerated in the United States Penitentiary at Leavenworth, Kansas, on October 18, 1961, and at all times since has been, and still is, a federal prisoner. A "detainer" was filed against him by the County Attorney of Limestone County in late August or early September, 1962.

Beginning in March, 1962, relator made several efforts to obtain a copy of the Limestone County indictment and finally obtained a copy in September of that year. In July, 1966, he filed a motion in the state district court entitled "Motion to Quash Indictment and Remove Detainer Warrant." One of the grounds of the motion is that he had been denied his constitutional right of speedy trial. The motion was overruled by the trial judge "until such time as petitioner's case is set for trial on its merits." In December, 1966, he filed a motion in the trial court for "Speedy Trial or Alternatively, Motion to Dismiss Indictment." On the same date he filed a petition for writ of *habeas corpus ad prosequendum.* The petition for writ of habeas corpus was denied by the trial judge on February 14, 1967.

On February 28, 1967, relator filed a petition in the Supreme Court of Texas by which he sought the issuance of a writ of mandamus to the district judge of the 77th District Court directing that relator be granted a speedy trial in Cause No. 4742–A or that the case be dismissed. The motion was overruled by this court on March 8, 1967, on the strength of our decisions in *Cooper* and *Lawrence,* supra. No further proceedings were instituted until after the Supreme Court of the United States decided Smith v. Hooey, supra, on January 20, 1969.

On May 21, 1969, relator filed in this court a petition which is the basis of the

1. The facts recited in this opinion are either contained in a stipulation signed by

the attorneys or are matters of record which we may judicially notice.

present proceeding. By his petition he asks only that the trial judge be directed to dismiss the criminal charge pending against him. Advised by the court's Administrative Assistant that the court was not disposed to issue a writ of mandamus to require the dismissal of charges, but that, if he wished, his petition would be treated as one seeking a speedy trial, relator replied that he "declined to ask *again*[2] for a speedy trial." Thereupon, we set the question presented by the petition down for hearing and decision and appointed counsel to represent relator.

 This court was created by the Constitution of the State of Texas and has only such jurisdiction as is conferred upon it by the Constitution and statutes of the State. The court has no "inherent power", Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270, 273 (1939); and not even the Supreme Court of the United States can confer upon it a power or jurisdiction beyond the limitations imposed by the source of its existence. This is not a lately developed philosophy, born of a desire to escape responsibility in a troublesome area of the law. It has always been the rule of decision in this State. It was so declared in Messner v. Giddings, 65 Tex. 301, 309 (1886), in this language: "There is no such thing as inherent power of a court, if, by that, be meant a power which a court may exercise without a law authorizing it." The same thought was put in even stronger language in Austin & N. W. R. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 405, 64 L.R.A. 494 (1903), as follows:

"Whatever may be the powers of courts of other states, there can be no doubt that the courts of Texas must look to the Constitution of this state, the enactments of the Legislature, and the common law for their authority to proceed as requested in this case [to require an injured plaintiff to submit to a physical examination]; and if the authority did not exist at common law, and has not

been conferred by the Constitution nor by the statutes of this state, then no court in Texas has the power to force any citizen to submit to a physical examination under such circumstances."

See also, Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389, 393 (1950). We look, then, to the Constitution and to relevant statutes to determine whether this court has jurisdiction and power to direct trial courts to dismiss pending cases.

Article V, § 3, Constitution of Texas, provides that the appellate jurisdiction of the Supreme Court extends "to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction * * *." It also provides that "[t]he Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." Article V, § 5 provides: "The Court of Criminal Appeals shall have appellate jurisdiction co-extensive with the limits of the State in all criminal cases of whatever grade, * *." Article V, § 6, authorizing creation of courts of civil appeals, provides: "Said Courts of Civil Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction." The clear effect of these constitutional provisions is that (1) the Supreme Court has no appellate jurisdiction in criminal cases; (2) the Court of Criminal Appeals has exclusive appellate jurisdiction in criminal cases; and, (3) except to enforce its own jurisdiction, the Supreme Court has only such original jurisdiction to issue writs of mandamus "as may be specified" by the Legislature.

Jurisdiction of the Supreme Court in original proceedings to issue writs of mandamus to judges, as specified by the Legislature, whether in civil or criminal cases, is found in Articles 1733 and 1734, Vernon's Ann.Texas Civil Statutes. Article 1733

2. Emphasis relator's.

provides: "The Supreme Court * * *, shall have power to issue writs of * * * mandamus agreeable to the principles of law regulating such writs, against any district judge, or Court of Civil Appeals or judges thereof, or any officer of the State Government, except the Governor." Article 1734 provides: "Said Court [the Supreme Court] or any judge thereof in vacation may issue the writ of mandamus to compel a judge of a district court to proceed to trial and judgment in a cause agreeably to the principles and usages of law, * * *." It will be noted that the power and jurisdiction of this court to issue a writ of mandamus to district judges can be exercised only agreeably "to the principles of law regulating such writs" and "agreeably to the principles and usages of law."

Some ninety-eight years ago, the Supreme Court of the United States told us in its opinion in Ex parte Newman, 14 Wall. 152, 81 U.S. 152, 20 L.Ed. 877 (1871), what the "principles and usages of law" are in such situations. The court said (81 U.S. 165–166):

"Applications for a mandamus to a subordinate court are warranted by the principles and usages of law in cases where the subordinate court, having jurisdiction of a case, refuses to hear and decide the controversy, or where such a court, having heard the cause, refuses to render judgment or enter a decree in the case, but *the principles and usages of law do not warrant the use of the writ to reexamine a judgment or decree of a subordinate court in any case, nor will the writ be issued to direct what judgment or decree such a court shall render in any pending case, nor will the writ be issued in any case if the party aggrieved may have a remedy by writ of error or appeal*,[3] as the only office of the writ when issued to a subordinate court is to direct the performance of a ministerial act or to command the court to act in a case where the court has jurisdiction and refuses to act, but *the supervisory court will never prescribe what the decision of the subordinate court shall be, nor will the supervisory court interfere in any way to control the judgment or discretion of the subordinate court in disposing of the controversy*."

Again (81 U.S. 169):

"*Superior tribunals may by mandamus command an inferior court to perform a legal duty where there is no other remedy, and the rule applies to judicial as well as to ministerial acts*, but it does not apply at all to a judicial act to correct an error, as where the act has been erroneously performed. *If the duty is unperformed and it be judicial in its character the mandate will be to the judge directing him to exercise his judicial discretion or judgment, without any direction as to the manner in which it shall be done*, or if it be ministerial, the mandamus will direct the specific act to be performed."

And again (81 U.S. 169–170):

" * * * Such a writ cannot perform the functions of an appeal or writ of error, as *the superior court will not, in any case, direct the judge of the subordinate court what judgment or decree to enter in the case, as the writ does not vest in the superior court any power to give any such direction or to interfere in any manner with the judicial discretion and judgment of the subordinate court*."

And some sixty-eight years ago, the Supreme Court of Texas adopted in toto the rules announced in Ex parte Newman. See Aycock v. Clark, 94 Tex. 375, 60 S.W. 665, 666 (1901). In conformity with these rules, we have consistently refused to issue writs of mandamus to district judges directing entry of particular types of judgments in civil cases when the party applying has an adequate remedy by appeal. See Aycock v. Clark, 94 Tex. 375, 60 S.W. 665 (1901); Matlock, Miller & Dycus v. Smith, 96 Tex. 211, 71 S.W. 956 (1903); Matthaei v. Clark,

---

3. Emphasis ours throughout unless otherwise indicated.

110 Tex. 114, 216 S.W. 856 (1919); Robertson v. Work, 114 Tex. 461, 270 S.W. 1006 (1925); Ben C. Jones & Co. v. Wheeler, 121 Tex. 128, 45 S.W.2d 957 (1932). For the same rule as to courts of civil appeals, see Yantis v. McCallum, 121 S.W.2d 610 (Tex.Civ.App.—Dallas, Original Proceeding, 1938); Coke v. Pottorff, 140 S.W.2d 586 (Tex.Civ.App.—San Antonio, Original Proceeding, 1940); American Bottling Co. v. Briggs, 232 S.W.2d 103 (Tex.Civ.App.—San Antonio, Original Proceeding, 1950). The rules quoted from Ex parte Newman, and adopted in Aycock v. Clark, have been modified in later years to the extent that a writ of mandamus will be issued by this court directing a district judge to enter or to set aside a particular judgment or order when the directed course of action is the only proper course and the petitioner has no other adequate remedy. Yett v. Cook, 115 Tex. 175, 268 S.W. 715, 281 S.W. 843 (1925); Thomason v. Seale, 122 Tex. 160, 53 S.W.2d 764 (1932); Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946); Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959); Wallace v. Briggs, 162 Tex. 485, 348 S.W.2d 523 (1961); Maresca v. Marks, 362 S.W.2d 299 (Tex.Sup.1962). But a writ positively will not issue for the purpose of controlling or correcting rulings or judgments on motions or pleas which are mere incidents in the normal trial process and there is an adequate remedy by appeal for correction of any such rulings or judgments which may be erroneous. Little v. Morris, 10 Tex. 263 (Tex.Sup.1853); Ewing v. Cohen, 63 Tex. 482 (Tex.Sup. 1885); Steele v. Goodrich, 87 Tex. 401, 28 S.W. 939 (1894); Matlock, Miller & Dycus v. Smith, 96 Tex. 211, 71 S.W. 956 (1903); Iley v. Hughes, 158 Tex. 362, 311 S.W.2d 648, 85 A.L.R.2d 1 (1958); Shamrock Fuel and Oil Sales Co. v. Tunks, 416 S.W.2d 779 (Tex.Sup.1967); Neville v. Brewster, 163 Tex. 155, 352 S.W.2d 449 (1962).

There is sound reason why appellate courts should not have jurisdiction to issue writs of mandamus to control or to correct incidental rulings of a trial judge when there is an adequate remedy by appeal. Trials must be orderly; and constant interruption of the trial process by appellate courts would destroy all semblance of orderly trial proceedings. Moreover, with this type of intervention, the fundamental concept of all American judicial systems of trial and appeal would become outmoded. Having entered the thicket to control or correct one such trial court ruling, the appellate courts would soon be asked in direct proceedings to require by writs of mandamus that trial judges enter orders, or set aside orders, sustaining or overruling (1) pleas to the jurisdiction, (2). pleas of privilege, (3) pleas in abatement, (4) motions for summary judgment, (5) motions for instructed verdict, (6) motions for judgment non obstante veredicto, (7) motions for new trial, and a myriad of interlocutory orders and judgments; and, as to each, it might logically be argued that the petitioner for the writ was entitled, as a matter of law, to the action sought to be compelled.

Thus far we have cited only decisions in original proceedings in which efforts have been made to invoke jurisdiction of this court to issue writs of mandamus to district judges in civil cases. That we also have jurisdiction to issue writs of mandamus to district judges in criminal cases is undoubted. Stakes v. Rogers, 139 Tex. 650 165 S.W.2d 81 (1942). See also Wilson v. Bowman, 381 S.W.2d 320 (Tex.Sup.1964); State v. Olsen, 360 S.W.2d 398 (Tex.Sup. 1962); Winfrey v. Chandler, 159 Tex. 220, 318 S.W.2d 59 (1958); State v. Anderson, 119 Tex. 110, 26 S.W.2d 174, 69 A.L.R. 233 (1930); Moreau v. Bond, 114 Tex. 468, 271 S.W. 379 (1925). The power is conferred and limited by the same constitutional and statutory provisions as are applicable in civil cases; and the decisional law imposing limitations on our jurisdiction in the field of civil litigation is equally controlling in the field of criminal litigation. As a matter of fact, our jurisdiction to issue writs to district judges in criminal cases is even more limited than in civil cases because of the duality of our appellate judicial sys-

tem. In issuing writs to judges in criminal cases, we must operate within the procedural framework of the Texas Code of Criminal Procedure as interpreted by the Court of Criminal Appeals, conceding to that court, where possible, every right of supremacy in criminal cases which our constitution intended that it should have.

The Court of Criminal Appeals has jurisdiction to issue writs of mandamus *only* when necessary to enforce the jurisdiction of the court, Article V, § 5, Constitution of Texas; Article 4.04, Texas Code of Criminal Procedure, Vernon's Ann.; Ex parte Rubison, 170 Tex.Cr.R. 314, 340 S.W.2d 815 (Tex.Cr.App.—1960); but areas of possible conflict still exist, and it is our duty to avoid conflicts when we can do so in good conscience. See Carter, The Texas Court of Criminal Appeals, 11 Texas L. Rev. 1, 13.

When we look to the Code of Criminal Procedure for guidance, we find no provision for a motion by a defendant, after indictment, to dismiss a criminal charge. The only Article of the Code authorizing dismissal, after indictment, is Article 32.02 which authorizes the attorney representing the State to dismiss with consent of the judge. Further, the judge *does not have power* to dismiss a criminal case before trial except upon motion of the State's attorney. State v. Anderson, 119 Tex. 110, 26 S.W.2d 174, 69 A.L.R. 233 (1930). It follows that, in the absence of a motion to dismiss filed in the trial court by the County Attorney of Limestone County, this court cannot direct Judge Ferguson by writ of mandamus to enter an order which he has no power to enter. However, we do not rest our denial of a writ in this proceeding on the narrow ground that relator expressly seeks only to require the district judge to do an act which he has no power to do. We will treat relator's petition as seeking to require the district judge to enter any order, authorized by the Code of Criminal Procedure or by law, which will terminate the pending case.

Article 27.02 of the Texas Code of Criminal Procedure enumerates and designates the only pleadings which may be filed by a defendant in a criminal case. A motion to dismiss a case because of denial of a speedy trial, or for any other reason, is not among them. The Article does, however, provide for a "motion to set aside the indictment or information." Article 27.03 specifies only three grounds upon which indictments or informations may be set aside. The factual basis of relator's motion does not meet any of the three requirements, but the specified grounds are stated to be "[i]n addition to any other grounds authorized by law." And although the Court of Criminal Appeals seems to have indicated in some of its recent opinions that denial of the right of speedy trial cannot be urged as a basis for challenging a trial court's jurisdiction or as a ground for dismissal, Parker v. State, 397 S.W.2d 853 (Tex.Cr.App.—1965); Dagley v. State, 394 S.W.2d 179 (Tex.Cr.App.—1965), we are satisfied from its earlier decisions and from decisions of the Supreme Court of the United States that a motion to set aside the indictment or to abate the prosecution on the ground that the accused has been denied his constitutional right of a speedy trial is authorized. See Rutherford v. State, 16 Tex.App. 649 (1884); Venters v. State, 18 Tex.App. 198 (1885); Carter v. State, 39 Tex.Cr.R. 345, 46 S.W. 236, 48 S.W. 508 (1898); 177 U. S. 442, 20 S.Ct. 687, 44 L.Ed. 839 (1899); Dominguez v. State, 90 Tex.Cr.R. 92, 234 S.W. 79, 18 A.L.R. 503 (1921); Juarez v. State, 102 Tex.Cr.R. 297, 277 S.W. 1091 (1925).

A plea in abatement of a criminal prosecution or a motion to set aside an indictment or information, whether for one of the reasons specified in Article 27.03, Texas Code of Criminal Procedure, or because of denial of a speedy trial, will, more often than not, require the taking and weighing of evidence. And while it may well be that in certain instances the facts may be so clear and compelling that a de-

fendant in a criminal case will be entitled, as a matter of law, to have a criminal prosecution abated or an indictment or information set aside, the question of abatement, as in civil litigation, is properly submitted in the first instance to the trial court. The Code of Criminal Procedure clearly contemplates that this is so in providing in Article 27.04 that, "[a]n issue of fact arising upon a motion to set aside an indictment or information shall be tried by the judge without a jury." Moreover, a defendant in a criminal case has an adequate remedy by appeal if his motion is erroneously overruled by the trial court and he is convicted of the offense charged; and he will have his remedy at the hands of the court created by the Constitution to adjudicate such matters on appeal.

There are strong reasons of public policy why this court cannot interfere by writ of mandamus with the trial process in cases of this character. In the first place, we would be interfering, indirectly, with the right of the Court of Criminal Appeals to exercise exclusive appellate jurisdiction in criminal cases. That court, not this one, should decide what facts or factors are to be considered in passing on pleas in abatement based on failure to give a speedy trial. In this connection, we note that the Court of Criminal Appeals has heretofore held, in a series of cases, that a defendant cannot successfully complain of the failure to give him a speedy trial in the absence of a demand therefor, Hernandez v. State, 4 Tex.App. 425 (1878); Goss v. State, 161 Tex.Cr.R. 37, 274 S.W.2d 697 (1954); White v. State, 166 Tex.Cr.R. 267, 312 S.W.2d 639 (1958); Parker v. State, 397 S.W.2d 853 (Tex.Cr.App.—1965); Laube v. State, 417 S.W.2d 288 (Tex.Cr. App.—1967); and the Supreme Court of the United States inferentially indicated its agreement by its statement in Smith v. Hooey that "[u]pon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." 393 U.S. 383, 89 S.Ct. 579, 21 L.Ed.

2d 614. The Court of Criminal Appeals has also indicated that a defendant cannot successfully complain of the failure to give him a speedy trial in the absence of an application to this court for a writ of mandamus to compel a trial of his case. Parker v. State, supra, and Goss v. State, supra. Whether these and other matters, such as length of delay, justification for delay, prejudice to the defendant, etc., are factors to be considered in passing on the merits of a plea in abatement, and what weight is to be given the various factors in a particular case, are matters which must be decided initially by a trial court, and must be decided on appeal by the Court of Criminal Appeals. For decisions by courts of other states dealing with some of the problems, see Barker v. Municipal Court of Salinas Jud. Dist., 64 Cal.2d 806, 51 Cal.Rptr. 921, 415 P.2d 809 (1966); Commonwealth v. McGrath, 348 Mass. 748, 205 N.E.2d 710 (1965); People v. Winfrey, 20 N.Y.2d 138, 281 N.Y.S.2d 823, 228 N.E. 2d 808 (1967); People v. Bryant, 12 N.Y. 2d 719, 233 N.Y.S.2d 771, 186 N.E.2d 127 (1962); People v. Piscitello, 7 N.Y.2d 387, 198 N.Y.S.2d 273, 165 N.E.2d 849 (1960); Richerson v. State, 91 Idaho 555, 428 P.2d 61 (1967). And while it would seem to us that a plea to abate prosecution on the charge contained in the indictment, rather than a motion to set aside or to quash the particular indictment, would be the proper plea to present the issue, this, too, is a question properly to be decided ultimately by the Court of Criminal Appeals.

Another public policy reason why it was never intended by the framers of the relevant constitutional and statutory provisions that this court should have jurisdiction to interfere by writ of mandamus with the trial process in cases of this character is that, in those cases in which we might refuse to order abatement and there was a conviction and an appeal with the question preserved for review, the defendant would have the constitutional question reviewed by both courts of last resort, and the Court of Criminal Appeals would occupy the in-

congruous position of exercising appellate jurisdiction over this court's decisions from which neither the Constitution nor the statutes of this State permit an appeal to another state court. And if this strange course of action were sanctioned, other defendants would have an equal right to expect in limine rulings by this court on all of the pleas provided for in Articles 27.03, 27.05, 27.08 and 27.09, Texas Code of Criminal Procedure.

We return to the facts in this case and to relator's petition for writ of mandamus. At the time when Judge Ferguson denied relator's petition for writ of *habeas corpus ad prosequendum*, and by that action refused to bring him to trial, the Supreme Court of the United States had not decided Smith v. Hooey, supra, and Judge Ferguson's action was governed by our decisions in Cooper v. State and Lawrence v. State, both supra. Neither Judge Ferguson nor this court is now being asked to have relator's case set for trial. Indeed, relator has stated to this court that any trial given him at this time "will be a farce and a sham and a mockery of Justice * * *." What relator perhaps does not realize is that his motion to quash, which the trial judge may treat as a plea in abatement, is still pending in the trial court to be finally disposed of at the time relator's case is set for trial and as a part of the trial process.[4] This procedure, adopted by Judge Ferguson, is strictly in keeping with the provision of the Code of Criminal Procedure which requires that the defendant be present when pleas of this character are heard. Article 28.01, Texas Code of Criminal Procedure.

If relator should decide, at any future time, that he wishes a trial of his case, we are satisfied that Judge Ferguson will honor the decision of the Supreme Court of the United States in Smith v. Hooey, supra, and will, with reasonable dispatch, have relator returned to Limestone County for trial, at which time further consideration will be given by him to relator's motion to quash. If Judge Ferguson should deny an application by relator for an early hearing on the motion to quash and trial of his case, as seems unlikely, relator may apply again to this court for a writ of mandamus to compel Judge Ferguson to take the indicated course of action.

Relator's petition for a writ of mandamus directing Judge Ferguson to dismiss cause No. 4742–A is denied.

---

4. The motion also asks that the indictment be quashed because (1) persons not having a poll tax were unconstitutionally excluded from the grand jury; (2) there was systematic discrimination in the selection of grand jurors; (3) the state lost jurisdiction by returning relator to Federal custody without state trial; (4) prosecution is barred by laches; (5) trial on the state indictment after trial in the Federal court of an offense growing out of the same transaction constitutes double jeopardy. All of these matters must first be considered and decided by the trial court.